

# THE ATTORNEY GENERAL
## OF TEXAS

Gerald C. Mann

AUSTIN 11, TEXAS

**ATTORNEY GENERAL**

Hon. C. J. Wilde
County Auditor
Nueces County
Corpus Christi, Texas

Opinion No. O-3672
Re: Taxable situs of oil and oil products stored in Nueces County awaiting transportation or processing.

This is in answer to your inquiry concerning the right of the state of Texas and Nueces County to assess and levy ad valorem taxes against certain crude oil and oil products, which inquiry reads as follows:

"There are vast quantities of oil, or oil products, stored in Nueces County. This oil and oil products may be classified as follows:

"1. Oil produced in Nueces County and stored in lease storage awaiting transportation to concentration points.

"2. Oil produced in Nueces County and stored at concentration points in Nueces County awaiting either:

    a. Transportation
    b. Facilities for refining.

"3. Oil produced in the state of Texas and transported to concentration storage in Nueces County, and awaiting either:

    a. Transportation
    b. Facilities for refining.

"4. Oil produced outside the state of Texas and transported to concentration storage in Nueces County awaiting either:

    a. Transportation
    b. Facilities for refining.

"5. Refined products stored in Nueces County processed from each classification above itemized.

"The owners of such oil are failing and refusing to render the same for taxation, asserting as a basis for such failure or refusal that the oil is in Interstate Commerce, and as such is not subject to taxation in either Nueces County or the state of Texas."

Your inquiry involves first, the right of the state of Texas to tax said property, and second, whether said property is taxable in Nueces County or some other Texas County in the event it is taxable in Texas.

It will be impossible for us to answer your questions categorically because they each involve a question of fact as to whether the property has come to rest within this state or is in transit, and we do not have all of the facts surrounding the transactions on which your questions are asked. A final decision of your questions, by lawsuit or otherwise, calls for an examination of all of the facts, including the nature and composition of the products, their origin, the route they followed, the reasons for their stay in Nueces County, their length of stay, the method of their processing and manufacture, their destination, and their various changes of ownership. If the final decision of your questions should be by lawsuit it is possible that some parts of the questions would be decided by a jury; and no human can anticipate with any degree of certainty what a jury will do. Therefore, we can only answer your questions by stating the general rules that control in the situations about which you ask.

In determining the right of the State of Texas to tax said property, we are confronted with two related problems: first, whether or not the oil and refined products are in transit in interstate commerce, and second, whether or not the oil and refined products have acquired a taxable situs in Texas, but this latter problem only arises when the owner is domiciled outside of the state.

On this first problem, which concerns interstate commerce, we find statements in 1 COOLEY ON TAXATION, Fourth Edition, as follows:

"A tax on property in transit from one state to another is invalid because an illegal burden on interstate commerce; and this is so although the articles taxed belong to citizens of the taxing state. This includes oil in transit through pipe lines, and sheep being driven through a state to

"What is the rule where the property is temporarily at rest? May the state where it then is tax it although it is the intention of the owner to remove the property to another state in the near future? The general rule is that property temporarily at rest is taxable, as where the transit has been interrupted and the property is held in storage or at distributing points to be delivered to buyers or reshipped to other places. Merchandise may cease to be interstate commerce at an intermediate point between the place of shipment and ultimate destination, and if kept at such point for the use and profit of the owners and under the protection of the laws of the state, it becomes subject to the taxing power of the state. ***." (1 COLLEY ON TAXATION, Fourth Edition, 821).

There have been several tax cases involving the movement of oil from one state to another, but it is difficult to arrive at a rule that can be applied to every fact situation. "Whether commerce is interstate or intrastate is a practical question to be determined by the facts of the particular case." 35 HARVARD LAW REVIEW 620. In the case of PRAIRIE OIL & GAS COMPANY v. ERHARDT, 244 Ill. 634, 91 N.E. 680, it was held that the interstate commerce clause of the Federal Constitution prohibited a state from levying ad valorem taxes against oil that was being moved from the state of Kansas to the state of Indiana through a pipe line, even though some of the oil accumulated and stayed for several days in working tanks at the pumping stations along the line by virtue of the oil not moving fast enough through sections of the line. In the case of STATE v. EMPIRE OIL & REFINING COMPANY, 171 Okla. 138, 4 Pac. (2d) 127, it was also held that oil moving continuously through a pipe line from one state to another was not subject to state ad valorem taxes. One of the leading cases on the question is the case of CARSON PETROLEUM COMPANY v. VIAL, 279 U.S. 95, 73 L.Ed. 626, 49 S.Ct., 292, in which it was held that oil in tanks in a seaport in Louisiana that had been brought from other states to that port for the sole purpose of export by ships to foreign countries and which was being held in said tanks for the purpose of allowing enough to accumulate to make a shipload or until a ship arrived to load the same was not subject to state ad valorem taxes because the storage of the oil in said tanks was part of a continuous interstate and foreign shipment. A different conclusion was reached in some other tax cases involving the movement of oil between states, one of those being the case of PRAIRIE OIL & GAS COMPANY v. JEFFERSON COUNTY, 76 Fed. (2d) 545, in which it was held that oil in tanks at a seaport in Texas was subject to state ad valorem taxes by virtue

of the fact that it was stored there for the purpose of exporting part of it, but not all, by ship, and a large amount of it remained in storage in the tanks a long time during which the owner endeavored to sell it locally without exporting it by ship. In the case of MAGNOLIA PETROLEUM COMPANY v. BOARD OF COUNTY COMMISSIONERS, 178 Okla. 484, 63 Pac. (2d) 6, it was held that oil was subject to state ad valorem taxes in a case in which it was stored in tanks from four months to a year by an interstate pipe line operating company for the purpose of having a supply available in the event the pipe line's regular source of supply was cut off because of breaks in the line or other reasons. In the case of GULF REFINING CO. v. PHILLIPS, 11 Fed. (2d) 967, it was held that oil in storage tanks in Louisiana was subject to state ad valorem taxes when it was shown that the oil had been brought from Arkansas by a pipe line carrying 16,-000 barrels a day and that a part of it was diverted and sent to a refinery in Texas by a pipe line carrying 8,000 barrels a day and that the remainder stayed in storage in said tanks or was sold locally. The facts in each of the above cited cases are different, and it is clear that in each case the court has sought to determine whether or not there was "a continuity of transit" of the oil at the time the attempt to assess the tax was made. The best statement of the rule that we have found in a case involving this question was made by Chief Justice Hughes in the case of STATE OF MINNESOTA v. BLASIUS, 290 U.S. 1, 78 L.Ed. 131, 54 S.Ct. 34, as follows:

"*** the states may not tax property in transit in interstate commerce. But, by reason of a break in the transit, the property may come to rest within a state and become subject to the power of the state to impose a nondiscriminatory property tax ***. The 'Crucial question,' in determining whether the state's taxing power may thus be exerted, is that of transit.' CARSON PETROLEUM COMPANY v. VIAL, 279 U.S. 95, 101, 49 S.Ct. 292, 293, 73 L.Ed. 626.

"***. The question is always one of substance, and in each case it is necessary to consider the particular occasion or purpose of the interruption during which the tax is sought to be levied***.

"Where property has come to rest within a state, being held there at the pleasure of the owner, for disposal or use, so that he may dispose of it either within the state, or for shipment elsewhere, as his interest dictates, it is deemed to be a part of the general mass of property within the state and is thus subject to its taxing power ***." (Underscoring ours).

The preceding paragraph has been an attempt to arrive at a rule by which it can be determined whether or not the oil and refined products in question are exempt from state ad valorem taxes by virtue of being in transit in interstate commerce. We will now take up the second problem in connection with the question of whether personal property in Texas is subject to state ad valorem taxes, and that is this: Even though the property is not in transit in interstate commerce, if the owner is domiciled outside of the state it must be determined whether or not the property has acquired a taxable situs in Texas. It is a well established rule of law that personal property is only taxable at the domicile of the owner, regardless of its location at the taxing date, if it has not acquired a taxable situs elsewhere. PULLMAN'S PALACE CAR COMPANY v. PENNSYLVANIA, 141 U.S. 18, 35 L.Ed 613, 11 S.Ct. 876; GREAT SOUTHERN LIFE INSURANCE COMPANY v. CITY OF AUSTIN, 112 Tex. 1, 243 S.W. 778. A statement of the rule concerning personal property acquiring a taxable situs in a state other than the owner's domicile is stated in 2 COOLEY ON TAXATION, Fourth Edition, 982, as follows:

"In order to acquire a situs in a state or taxing district so as to be taxable in the State or district regardless of the domicile of the owner and not taxable in another state or district at the domicile of the owner, tangible personal property must be more or less permanently located in the state or district. In other words, the situs of tangible personal property is where it is more or less permanently located rather than where it is merely in transit or temporarily and for no considerable length of time. If tangible personal property is more or less permanently located in a state other than the one where the owner is domiciled, it is not taxable in the latter state but is taxable in the state where it is located. If tangible personal property belonging to one domiciled in one state is in another state merely in transitu or for a short time, it is taxable in the former state, and is not taxable in the state where it is for the time being. Often, if not usually, a tax imposed by the state where property is in transit involves interstate commerce, in which case the question is not one of taxable situs but the broader one whether such a tax constitutes an unlawful interference with interstate or foreign commerce. ***"

The foregoing has been a discussion of rules concerning the right of the state of Texas to tax personal property when there is a question of interstate commerce and when there is a question of the owner's domicile being outside of the state. If it is determined that the oil and refined products about which you

ask are subject to ad valorem taxes under the laws of Texas, it must be decided whether or not Nueces County is the county in which such taxes should be levied. That is a question of whether or not the oil and products have acquired a taxable situs in Nueces County. If the owner's domicile is in Nueces County and the property is also located in that county (and there is no question of interstate commerce), the property is clearly taxable in that county. But, it is a fact question that may not be easy to decide if the owner's domicile is outside of Nueces County. We do not have the detailed facts on your questions and therefore we will only endeavor to state the general rules applicable in such cases.

The test of whether or not personal property has acquired a taxable situs in a county other than the county of the owner's domicile is the same as the test of whether or not such property has acquired a taxable situs in a state other than the state of the owner's domicile. The question of oil in a pipe line and working tanks being taxable in a county other than the owner's domicile was considered in Attorney General's Opinion No. O-885, dated June 22, 1939, and addressed to Hon. E. P. Jennings, County Auditor of Hardin County. In that case the facts showed no oil was stored, but that all of the oil, including the oil in the working tanks, was actually in transit; and, it was held in said opinion that the county in which said oil was located on the taxing date (January 1st) could not collect ad valorem taxes on the same, if it was owned by a person or corporation whose domicile was in another county. That opinion was based on the case of CUMBERLAND PIPE LINE COMPANY v. COMMONWEALTH, 258 Ky. 90, 79 S.W.(2d) 366, which involved oil moving from one county to another in a pipe line. The constitutional provisions and statutes that should be considered in dealing with this question are Article VIII, Section 2, of the Constitution of Texas, and Articles 7151 and 7153, of the Revised Civil Statutes of Texas. Article VIII, Section 2, of the Constitution reads in part as follows:

"All property, whether owned by persons or corporations shall be assessed for taxation, and the taxes paid in the county where situated, but the Legislature may, by a two-thirds vote, authorize the payment of taxes of non-residents of counties to be made at the office of the Comptroller of Public Accounts ***."

Article 7151, Revised Civil Statutes, reads in part as follows:

"All property shall be listed for taxation between January 1 and April 30 of each year, when required by the assessor, with reference to the quantity

held or owned on the first day of January in
the year for which the property is required
to be listed or rendered ***"

Article 7153, Revised Civil Statutes, reads as follows:

"All property, real and personal, except
such as is required to be listed and assessed
otherwise, shall be listed and assessed in the
county where it is situated; and all personal
property, subject to taxation and temporarily
removed from the state or county, shall be
listed and assessed in the county of the resi-
dence of the owner thereof, or in the county
where the principal office of such owner is
situated."

In the case of GREAT SOUTHERN LIFE INSURANCE COMPANY v. CITY OF
AUSTIN, supra, the Supreme Court of Texas said:

"Our Constitution, therefore, in declaring
that property shall be taxed where situated,
has done no more than declare the common-law
rule. The purpose of the Constitution in declar-
ing that property should be taxed in the county
where situated, was merely to define the general
jurisdictional unit for the exercise of the tax-
ing power, and to confine the exercise of that
power to the subjects of taxation within that
unit. It did not define what was meant by the
words 'where situated.' Since it had reference
to the taxing power, it evidently meant property
where situated for the purposes of taxation un-
der the general principles of law as then under-
stood. County Treasurer v. Webb & Garrison, 11
Minn. 500 (Gil. 378); San Francisco v. Lux, 64
Cal. 481, 2 Pac. 254; San Francisco v. Mackey
(C.C.) 22 Fed. 602. 607.

"Under the common law, 'mobilia sequuntur
personam' was a well established maxim, and per-
sonal property of every description was taxable
only at the domicile of its owner, regardless of
its actual location. This is still the basic
principle upon which the taxation of personal
property rests. 26 R.C.L. § 241, pp. 273, 274.
But even prior to the Revolution the principle
had been abrogated to the extent that, as between
different towns and taxing districts, certain
classes of tangible personal property had a taxable

situs where employed in business, regardless
of the domicile of its owner. 26 R.C.L. § 244,
pp. 276, 277; Pullman's Palace Car Co. v. Penn-
sylvania, 141 U.S. 388, 24 Sup.Ct. 109, 48 L.Ed.
232."

In the case of CITY OF GALVESTON v. HADEN, 214 S.W. 766, the
Court of Civil Appeals at Galveston, said:

"***.  The law seems to be well settled in
Texas that the proper place to tax personal prop-
erty is the residence of the owner, provided it
has not acquired a situs for purposes of taxation
elsewhere, in which instance it is to be taxed
where situated.  Constitution of Texas, Art. 8,
§ 11; R.S. Arts. 7510 and 7514; City of Austin v.
Insurance Co., 211 S.W. 482.  Indeed, the cases
cited in the foregoing conclusions so hold, par-
ticularly the Guffey Case, with reference to such
physical property as is here involved, and both
litigants appear to proceed upon the assumption
that such is the rule, differing only as to whether
this property was shown to have a situs where lo-
cated.  The question, then, upon this feature of
the case turns in this court, on whether or not the
evidence was sufficient to support the trial court's
finding that the property as to which any recovery
for taxes was denied had in fact acquired a situs
outside of the city of Galveston, where its owner
resided."

The question of whether cattle owned by a person living in Okla-
homa had acquired a taxable situs in Texas is discussed in the
case of HARDESTY BROTHERS v. FLEMING, 57 Tex. 395.  Other cases
dealing with similar questions are COURT v. O'CONNOR, 65 Tex.
334, and CITY OF GALVESTON v. J. M. GUFFEY PETROLEUM CO., 113
S.W. 585.  We find a statement on this question in 2 COOLEY ON
TAXATION, Fourth Edition, 975 as follows:

"***  Its taxable situs is where it is more
or less permanently located, regardless of the domi-
cile of the owner.  It is well settled that the state
where it is more or less permanently located has the
power to tax it although the owner resides out of the
state, ***.

" ***

"As to the place in the state where tangible
personal property is taxable, the same rules as to

situs apply as where the question is whether
the situs is inside or outside the state, pro-
vided it is not otherwise regulated by statute.
***."

We regret that we cannot answer each of your ques-
tions "yes" or "no", but in view of the fact that they are
fact questions and that we do not have all of the facts before
us we have given you the foregoing rules and suggest that you
apply said rules to each fact situation.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Cecil C. Rotsch
Cecil C. Rotsch, Assistant

APPROVED JUL 22, 1941
/s/ Grover Sellers
FIRST ASSISTANT ATTORNEY GENERAL

APPROVED:  OPINION COMMITTEE
BY:        BWB, CHAIRMAN

CCR:ob:wb